UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

THOMAS P. BURNSIDE,           :
                              :CIVIL ACTION NO. 3:15-CV-2104
          Plaintiff,          :
                              :(JUDGE CONABOY)
          v.                  :
                              :
CAROLYN W. COLVIN,            :
Acting Commissioner of        :
Social Security,              :
                              :
          Defendant.          :
                              :
_____

**MEMORANDUM**

Pending before the Court is Plaintiff's appeal from
Defendant's denial of Supplemental Security Income ("SSI") under
Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381-
1383f.  (Doc. 1.)  Plaintiff alleged disability beginning on
October 1, 2013.  (R. 11.)  The Administrative Law Judge ("ALJ")
who evaluated the claim, Therese A. Hardiman, concluded in her July
17, 2015, decision that Plaintiff did not have any severe
impairment or combination of impairments.  (R. 14.)  ALJ Hardiman
therefore found Plaintiff was not disabled under the Act from the
alleged onset date through the date of the decision.  (R. 21.)

With this action, Plaintiff asserts that the Acting
Commissioner's decision should be remanded based on the following
alleged errors: 1) the ALJ failed to proffer post-hearing evidence
to Plaintiff's counsel; 2) the ALJ did not assist Plaintiff in
developing his claim; 3) the ALJ did not adequately develop
Plaintiff's mental impairment; 4) the ALJ erred in finding

Plaintiff's impairments non-severe; and 5) the ALJ failed to address probative evidence regarding Plaintiff's allegations of severe pain.  (Doc. 9 at 3-12.)  After careful review of the record and the parties' filings, I conclude this matter is properly remanded.

## I. Background

### A.    Procedural Background

Plaintiff filed for SSI on October 31, 2013, alleging disability beginning on October 1, 2013.  (R. 11.)  The claim was initially denied on January 14, 2014, and Plaintiff filed a request for a hearing before an ALJ on February 14, 2014.  (*Id.*)

ALJ Hardiman held a hearing on April 8, 2015.  (*Id.*) Plaintiff, who was represented by an attorney, testified as did Vocational Expert ("VE") Karen Kane.  (*Id.*)  As noted above, the ALJ issued her unfavorable decision on July 17, 2015, finding that Plaintiff was not disabled under the Social Security Act during the relevant time period.  (R. 21.)

On July 29, 2015, Plaintiff filed a Request for Review with the Appeals Council.  (R. 6-7.)  The Appeals Council denied Plaintiff's request for review of the ALJ's decision on August 28, 2015.  (R. 1-5.)  In doing so, the ALJ's decision became the decision of the Acting Commissioner.  (R. 1.)

On November 2, 2015, Plaintiff filed his action in this Court appealing the Acting Commissioner's decision.  (Doc. 1.)  Defendant

filed her answer and the Social Security Administration transcript on January 15, 2016.  (Docs. 5, 6.)  Plaintiff filed his supporting brief on March 17, 2016.  (Doc. 9.)  Defendant filed her brief on April 5, 2016.  (Doc. 10.)  Plaintiff filed his reply brief on April 29, 2016.  (Doc. 13.)   Therefore, this matter is fully briefed and ripe for disposition.

**B.    *Factual Background***

Plaintiff did not provide a factual background in his brief. Because this matter was decided at step two when ALJ Hardiman concluded that Plaintiff did not suffer from a severe impairment or combination of impairments and Plaintiff claims the record shows that he suffers from a severe impairment (Doc. 9 at 11-12), evidence cited by Plaintiff in support of this assertion and evidence cited by Defendant opposing it will be the focus of the evidence reviewed here.

In his application for benefits, Plaintiff alleged that his ability to work was limited because of multiple herniated cervical discs and COPD.  (R. 173.)  ALJ Hardiman noted that "the record reflects diagnostic impressions of, including but not limited to, neck, right arm, and low back pain, herniation of C4-5, possible lumbar herniation, lumbar and thoracic degenerative disc disease, lumbar and thoracic stenosis, cervical radiculopathy, and psoriatic arthritis."  (R. 15.)  She added that, though these impressions are noted by an acceptable medical source, they were "not established

as being severe based on a *current* analysis of the relevant evidence in the actual period under consider[ation]."  (*Id.*)

## 1.  **Medical Record Evidence**

In support of his claimed error, Plaintiff points to clinical findings showing "decreased range of motion (R. 221, 223, 458, 460), spasm (R. 222, 223, 460), positive straight leg raise (R. 225, 229), and right shoulder/arm weakness (R. 228, 229, 494, 498). (Doc. 9 at 11.)  Though not all of these records are within the relevant time period of October 1, 2013, through July 17, 2015, I review them here and will consider their relevance in the discussion section of this Memorandum.

On July 12, 2012, Plaintiff was seen by Elaine Lacey who was a certified physician's assistant in the office of Plaintiff's primary care physician, Albert D. Janerich, M.D.  (R. 221.)  Ms. Lacey noted that Plaintiff had last seen Dr. Janerich on July 7, 2011, and that he "continues to convalesce from chronic neck pain related to discogenic disease, and documented right C5/6 radiculopathy."  (*Id.*)  She also noted that Plaintiff had been maintained on Lyrica but that he could not afford them because "[h]e is self-pay now."  (*Id.*)  Examination showed that Plaintiff continued to have restricted range of motion of the cervical spine, tenderness over the right paracervical region and right trapezius area, no significant spasm, and no frank trigger points.  (*Id.*)

On January 15, 2013, Plaintiff was seen by his treating

internist, Gerald P. Gibbons, M.D., for, what Dr. Gibbons called his "chronic neck and back pain from a right C4-C5 distribution herniated disc causing him chronic neck and upper back pain, arm and shoulder pain, not allowing him to work." (R. 229.) Physical examination showed the following: reflexes 1+ and symmetric bilaterally; IV/V weakness bilaterally, more so on the right than left; and positive straight leg raising test. (*Id.*) Dr. Gibbons also noted that Plaintiff did not have additional blood work, x-rays, or MRI scans because he had no insurance and could not afford them. (*Id.*) Dr. Gibbons recorded the following assessment:

> Herniated right C4-C5 disc causing him significant neck and chronic back pain that has rendered him disabled. He remains disabled for this. The only hope in improving this would be surgical intervention, and he does not want that at this point. We cannot guarantee that a surgical intervention would resolve his problem satisfactorily.
>
> Hypertension. Fairly well controlled on Lisinopril and Tenormin. He should have regular blood work but he has no coverage and cannot afford to pay for it. He understands he places himself at risk for not doing this.
>
> Continues to smoke about half a pack a day. . . .
>
> He needs complete blood work, colonoscopy, stress test, echocardiaogram, EKG, espohagogastroduodenoscopy, carotid duplex scan, MRI repeat of his neck and T and LS spine, but he has no means to afford these.
>
> He has psoriasis and does have elements of psoriatic arthritis.

> In view of all of the above, it is my opinion wihin a reasonable degree of medical certainty that he is and remains totally disabled from his right C4-C5 disc herniation, COPD, Hypertension, and psoriatic arthritis, and also he may well have thoracic and lumbosacral spine disc disease but is unable to afford to have these tests done.

(R. 229.)

On January 30, 2013, Dr. Janerich noted that Plaintiff "remains convalescing from injuries sustained in MVA taking place on November 1, 1999" and there had been no major changes since his last visit in July 2012. (R. 222.) Dr. Janerich reported that on examination Plaintiff was depressed, his movements were slow and guarded, there was spasm, no trigger points were identified, and range of motion was limited. (*Id.*) He also noted that he told Plaintiff he would support his disability claim if asked. (*Id.*)

On May 17, 2013, Dr. Gibbons saw Plaintiff for the same problems and the assessment was similar. (R. 228.) The only problem noted on physical examination was IV/V weakness in the right arm. (*Id.*)

On July 25, 2013, Plaintiff saw Dr. Janerich who again reported that Plaintiff was "convalescing from disabling neck pain, the cause of which relates to a MVA taking place on November 1, 1999, resulting in a herniated disc with radiculopathy." (R. 223.) Dr. Janerich noted that Plaintiff was reliant on opiates and Gabapentin to assist with his pain management and also there had been no major changes since he was seen in January 2013. (*Id.*)

6

His recorded examination findings included the following: Plaintiff was "depressed and distraught as he still has not gotten disability benefits for his condition"; Plaintiff had spasm in his neck with restricted motion; and "[p]ain and guarding precluded an accurate assessment of the complete clinical neurologic examination on manual muscle testing."[1]  (*Id.*)

On October 4, 2013, Plaintiff was again seen by Dr. Gibbons. (R. 225-27, 494-96.)  Plaintiff had positive right greater than left straight leg raising test and reflexes were minimal bilaterally.[2]  (R. 225.)  Dr. Gibbons noted that Plaintiff had significant COPD from smoking and significant psoriatic arthritis. (*Id.*)  He also noted that Plaintiff "may have thoracic and lumbosacral spine disease but we cannot get the appropriate testing done to confirm this clinically."  (*Id.*)  The lack of testing was linked to Plaintiff's inability to get insurance.  (*Id.*)  He opined that Plaintiff "remains totally disabled from [his] right C5-C4 disc herniation that is chronic," adding that Plaintiff did not want to have surgery for the condition.  (R. 225.)

On May 22, 2014, Plaintiff was seen at Dr. Janerich's office and his chronic conditions were reevaluated.  (R. 457-58.)

---

[1] Dr. Janerich reported that he told Plaintiff he would try to assist him in obtaining disability benefits.  (R. 223.)

[2]  These findings were in the "Chief Complaint/HPI" section of the office notes.  (R.  225.)  They were not repeated in the "Physical Examination" section.  (R. 226.)

7

Plaintiff appeared "very depressed" and was referred to community counseling but he did not seem interested in it.  (R. 458.) Physical examination showed the following: depressed mood; fair to poor hygiene; continued restricted range of motion of the cervical spine; and tenderness of the right paracervical region as well as the right trapezius region.  (*Id.*)  Plaintiff reported that the TENS unit did not give him any significant relief.  (*Id.*)

When Plaintiff was hospitalized for pneumonia in October 2014, the Review of Systems was negative for musculoskeletal pain.  (R. 240.)  Examination showed normal range of motion of the neck and no problem with his extremities.  (*Id.*)

On November 6, 2014, Dr. Janerich's clinical notes indicate that he again saw Plaintiff for his chronic neck pain with radicular features resulting from the 1999 accident.  (R. 460.) Dr. Janerich reported that Plaintiff's "diagnostic workup is consistent with a disc herniation at C4-5 with a right C-6 radiculopathy as evidenced on EMG nerve conduction study done March 27, 2007."  (*Id.*)  Subjectively, Plaintiff noted a worsening of his symptoms.  Dr. Janerich recorded that there was spasm, no trigger points were identified, and range of motion remained restricted. (*Id.*)  Dr. Janerich also noted that Plaintiff "was advised against work as he had been employed by labor as a laborer."  (*Id.*)

On January 26, 2015, Dr. Gibbons saw Plaintiff for followup and noted that Plaintiff continued to have difficulties because of

the C4-C5 herniation "for which he has continued to have no insurance coverage for surgery." (R. 498.)  Dr. Gibbons also noted that "he continues to remain disabled and is unable to perform any type of meaningful work that requires lifting, pulling, stretching, etc." (*Id.*)  Assessment included numbness in the right leg and right arm, positive right greater than left straight leg raising, and reflexes minimal bilaterally.  (R. 499.)

## 2.  **Hearing Testimony**

At the April 8, 2015, hearing before ALJ Hardiman, Plaintiff testified that he was not getting any form of government assistance, he was not getting any psychological care or counseling, he sold plasma to get cash, and he minimally takes care of personal hygiene and household chores.  (R. 73, 79, 82.)  Plaintiff said he couldn't remember when he last picked anything up off the floor, from a seated position he could straighten out his left leg and put it down but was not sure about his right, he could not reach overhead with his right arm, he sleeps between six and eleven hours per night, he is able to stand for a couple minutes before he has to sit or walk, he is able to sit for extended periods but has to shift positions, and he estimated he could walk about sixty-five feet.  (R. 75-77.)  Plaintiff listed the medications he was taking, noting that his pain medications take the edge off his pain, he was taking Alprazolam for stress but he was "not doing very good stress wise," and medication side effects

include dizziness and problems with concentration and focus, both of which he reported to be "really shot."  (R. 77.)

## 3.   ALJ Decision

In her July 17, 2015, Decision, ALJ Hardiman made the following Findings of Fact and Conclusions of Law:

1. The claimant has not engaged in substantial gainful activity since October 31, 2013, the application date (20 CFR 416.971 et seq.).

2. The claimant has the following medically determinable impairments or diagnostic impressions: herniation of C4-5, possible lumbar herniation, lumbar and thoracic degenerative disc disease, lumbar and thoracic stenosis, cervical radiculopathy, psoriatic arthritis, neck, right arm, and low back pain, chronic obstructive pulmonary disease (COPD), status post right and left upper lobe masses, status post pneumonia, status post hypoxemia, hypertension, iron deficiency anemia, incidental chronic micro hemorrhage of the occipital lobe, and dental disease (20 CFR 416.921 et seq.).

3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 416.921 et seq.).

4. The claimant has not been under a disability, as defined in the Social Security Act, since October 31, 2013, the date the application was filed (20 CFR 416.920(c)).

(R. 14-21.)

## II. Disability Determination Process

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[3]  It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairment matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experiences preclude him from doing any other sort of work.  20 C.F.R. §§ 404.1520(b)-(g), 416.920(b)-(g); *see Sullivan v. Zebley*, 493 U.S.

---

[3]  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less that 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  The Act further provides that an individual is disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

521, 110 S. Ct. 885, 888-89 (1990).

   If the impairments do not meet or equal a listed impairment, the ALJ makes a finding about the claimant's residual functional capacity based on all the relevant medical evidence and other evidence in the case record.  20 C.F.R. § 404.1520(e); 416.920(e).  The residual functional capacity assessment is then used at the fourth and fifth steps of the evaluation process.  *Id.*

   The disability determination involves shifting burdens of proof.  The initial burden rests with the claimant to demonstrate that he or she is unable to engage in his or her past relevant work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  *Mason v. Shalala*, 993 F.2d 1058, 1064 (3d Cir. 1993).

   As set out above, the instant decision was decided at step two of the sequential evaluation process when the ALJ found that Plaintiff did not have a severe impairment or combination of impairments.  (R. 14.)

### III. Standard of Review

   This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision.  42 U.S.C. § 405(g); *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence means "more than a mere scintilla.  It means such relevant evidence

as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). The Third Circuit Court of Appeals further explained this standard in *Kent v. Schweiker*, 710 F.2d 110 (3d Cir. 1983).

> This oft-cited language is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence--particularly certain types of evidence (e.g., that offered by treating physicians)--or if it really constitutes not evidence but mere conclusion. *See* [*Cotter*, 642 F.2d] at 706 ("'Substantial evidence' can only be considered as supporting evidence in relationship to all the other evidence in the record.") (footnote omitted). The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent*, 710 F.2d at 114.

This guidance makes clear it is necessary for the Secretary to analyze all evidence. If she has not done so and has not sufficiently explained the weight given to all probative exhibits, "to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are

13

rational." *Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979). In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter*, 642 F.2d at 706-07. However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See, e.g., Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). "There is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). "[W]here [a reviewing court] can determine that there is substantial evidence supporting the Commissioner's decision, . . . the *Cotter* doctrine is not implicated." *Hernandez v. Commissioner of Social Security*, 89 Fed. Appx. 771, 774 (3d Cir. 2004) (not precedential).

A reviewing court may not set aside the Commissioner's final decision if it is supported by substantial evidence, even if the court would have reached different factual conclusions. *Hartranft*, 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported

14

by substantial evidence, shall be conclusive . . .").  "However,
even if the Secretary's factual findings are supported by
substantial evidence, [a court] may review whether the Secretary,
in making his findings, applied the correct legal standards to the
facts presented." *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d
Cir. 1983) (internal quotation omitted).  Where the ALJ's decision
is explained in sufficient detail to allow meaningful judicial
review and the decision is supported by substantial evidence, a
claimed error may be deemed harmless.  *See*, *e.g.*, *Albury v.
Commissioner of Social Security*, 116 F. App'x 328, 330 (3d Cir.
2004) (not precedential) (citing *Burnett v. Commissioner*, 220 F.3d
112 (3d Cir. 2000) ("[O]ur primary concern has always been the
ability to conduct meaningful judicial review.").  An ALJ's
decision can only be reviewed by a court based on the evidence that
was before the ALJ at the time he or she made his or her decision.
*Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001).

## IV. Discussion

Plaintiff asserts that the Acting Commissioner's decision
should be remanded for the following reasons: 1) the ALJ failed to
proffer post-hearing evidence to Plaintiff's counsel; 2) the ALJ
did not assist Plaintiff in developing his claim; 3) the ALJ did
not adequately develop Plaintiff's mental impairment; 4) the ALJ
erred in finding Plaintiff's impairments non-severe; and 5) the ALJ
failed to address probative evidence regarding Plaintiff's

allegations of severe pain.  (Doc. 9 at 3-12.)  I conclude that
this matter must be remanded because the ALJ did not properly
evaluate Plaintiff's diagnosed impairments at step two.

Setting out the five-step sequential process, 20 C.F.R. §
404.1520(a)(4)(ii) provides that the medical severity of
impairments is considered at step two: "If you do not have a severe
medically determinable physical or mental impairment that meets the
duration requirement in § 404.1509, or a combination of impairments
that is severe and meets the duration requirement, we will find
that you are not disabled."  Section 404.1527(c) states that "[y]ou
must have a severe impairment.  If you do not have any impairment
which significantly limits your physical or mental ability to do
basic work activities, we will find that you do not have a severe
impairment and are, therefore, not disabled."  "Basic work
activities" include physical functions such as walking, standing,
sitting, lifting, pushing, pulling, reaching, carrying, or
handling, and understanding, carrying out, and remembering simple
instructions.  20 C.F.R. § 404.1521(b).

As explained in *McCrea v. Comm'r of Social Security*, 370 F.3d
357 (3d Cir. 2004),

> The burden placed on an applicant at
> step two is not an exacting one.  Although
> the regulatory language speaks in terms of
> "severity," the Commissioner has clarified
> that an applicant need only demonstrate
> something beyond "a slight abnormality or a
> combination of slight abnormalities which
> would have no more than a minimal effect on

an individual's ability to work."  SSR 85-28,
1985 WL 56856, at *3; *see also Newell* [*v.
Comm'r of Social Security*], 347 F.3d [541],
546 [(3d Cir. 2003)] ("If the evidence
presented by the claimant presents more than
a 'slight abnormality,' the step-two
requirement of 'severe' is met, and the
sequential evaluation process should
continue.")  Any doubt as to whether this
showing has been made is to be resolved in
favor of the applicant.  *Newell*, 347 F.3d at
546-47.  In short, "[t]he step-two inquiry is
a *de minimis* screening device to dispose of
groundless claims."  *Id.* at 546; *accord
McDonald* [*v. Sec'y of Health and Human
Services*], 795 F.2d [1118,] 1123 [(1st Cir.
1986)].

Due to this limited function, the
Commissioner's determination to deny an
applicant's request for benefits at step two
should be reviewed with close scrutiny.  We
do not suggest, however, that a reviewing
court should apply a more stringent standard
of review in these cases.  The Commissioner's
denial at step two, like one made at any
other step in the sequential analysis, is to
be upheld if supported by substantial
evidence on the record as a whole.  *See
Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d
Cir. 1992) ("Neither the district court nor
this court is empowered to weigh the evidence
or substitute its conclusions for those of
the fact-finder.")  Instead, we express only
the common-sense position that because step
two is to be rarely utilized as a basis for
the denial of benefits, *see* SSR 85-28, 1985
WL 56856, at *4 ("Great care should be
exercised in applying the not severe
impairment concept."), its invocation is
certain to raise a judicial eyebrow.

370 F.3d at 360-61.  SSR 85-28 further provides that "[i]f an

adudicator is unable to determine clearly the effect of an

impairment or combination of impairments on the individual's

17

ability to basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." 1985 WL 56856, at *4.

In her step-two analysis, ALJ Hardiman notes that pain is not a medically determinable impairment and the diagnosis of a subjective complaint is merely a descriptor diagnosis. (R. 16.) She adds that "[s]ubjective complaints alone cannot establish the existence of a medically determinable impairment nor can they support the finding of disability without demonstrated medically acceptable signs or laboratory findings to support the same." (R. 16-17.) Specific to this case, the ALJ states that

> [t]he record also notes diagnoses or treatment for a herniation of C4-5, possible lumbar herniation, lumbar and thoracic degenerative disc disease, lumber and thoracic stenosis, cervical radiculopathy, and psoriatic arthritis (Exhibits B1F, B2F, B4F, B5F and B6F). The record during the relevant period, however, contains absolutely no current imaging or diagnostic testing establishing any current cervical, thoracic, or lumbar spine impairments. The record during the relevant period also contains no imaging or diagnostic testing establishing any current upper or lower extremity impairments. Further, the record during the relevant period contains no current imaging or diagnostic testing establishing any actual osteoarthritis or inflammatory arthritis, such as psoriatic arthritis. The evidence that predates the relevant period, likewise, contains no actual longitudinal imaging or diagnostic testing establishing any longitudinal or ongoing cervical, thoracic, or lumbar spine impairment, upper or lower extremity impairments, or any osteo or inflammatory arthritis. While physiatrist,

Dr. Janerich, notes a very remote history of a motor vehicle accident November 1, 1999 that resulted in a herniated disc with radiculopathy (Exhibit B4F/1), the only actual magnetic resonance imaging (MRI) study of the cervical spine is contained in the prior record on appeal in the Federal Court and is dated December 1, 1999.  This study reports a shallow midline herniated nucleus pulposus at C4-5; the balance of the cervical spine was otherwise unremarkable (Exhibit B7F).  Likewise, the only electromyography (EMG)/nerve conduction study (NCS) of the upper extremities is dated March 27, 2007 (Exhibit 10F/35-39).  This is also remote and significantly predates the current period, only noting right C6 radiculopathy.

There is no evidence during the relevant period that the claimant has been referred for work up by a neurosurgeon for this condition.  The record reflects periodic visits to his primary care provider, who, while opining disability, reports essentially normal longitudinal objective findings, including those related to the claimant's neck, back, extremities, and neuruological function (Exhibits B5F and B6F).  Although the January 2015 assessment portion of the notes it is reported that the claimant's subjective complaints of numbness in his right leg and arm, and that he does have a positive right greater than left straight leg raising test and reflexes are minimal bilaterally, the doctor's actual physical examination findings in the same notes are reported as normal, including those related to his specific neurological and inflammatory findings.  Further, there are no objective sensation loss findings, the degrees are not noted with respect to straight leg raising, and the doctor does not note which reflexes are "minimal" (Exhibit B6F).  The claimant is seen only three times during the relevant period by Dr. Janerich for pain management, and his findings report subjective complaints, however, are either devoid of objective findings or report almost identical

19

> findings of restricted neck motion and spasm,
> without noting degrees of limitation or
> precise location of the spasm (Exhibits B4F
> and B5F).

(R. 17.)

Relying primarily on *McCrea*, Plaintiff maintains the ALJ erred because she did not properly consider clinical findings supporting limitations which the Commissioner expressly recognizes as "objective" indications of pain and dysfunction.  (Doc. 9 at 10-12; Doc. 13 at 6-7 (citing R. 221, 222, 223, 225, 228, 229, 458, 460, 494, 498; 20 C.F.R. § 416.929(c)(2)).)  In his reply brief, he notes that Defendant does not respond to his argument that "[t]he Commissioner's own regulations cite findings such as these as objective indicators of pain and dysfunction, thus supporting evidence of a 'severe' impairment."  (Doc. 13 at 7 (citing 20 C.F.R. § 416.929(c)(2)).)

Viewed in the context of the record as a whole, ALJ Hardiman does not satisfy the substantial evidence standard because she does not cite evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Newell*, 347 F.3d at 549.  The main problem with her analysis is that she does not take into consideration the documented "chronic" nature of Plaintiff's disc herniation and related problems and Plaintiff's treating doctors' longitudinally consistent analysis of the condition.  *See supra* pp.4-9.  Further, Dr. Gibbons' assessed in January 2013 that Plaintiff's only hope in improving the chronic neck and back pain

caused by the C4-C5 herniation would be surgical intervention and
he could not guarantee that this would satisfactorily resolve the
problem.  (R. 229.)  He made a similar notation in January 2015,
adding that Plaintiff had no insurance coverage for surgery.  (R.
498.)  The record does not provide evidence that testing and
findings predating the relevant period are not supportive of the
severity of an impairment *during* the period; rather, it shows
Plaintiff had a chronic condition which *might* be helped by surgery
which he could not afford throughout the relevant period.  ALJ
Hardiman's focus on diagnostic testing during the relevant time
period is also problematic because, as the evidence reviewed above
shows, the treating physicians regularly noted that further testing
was not accomplished because Plaintiff had no insurance, he did not
have the funds to pay for the testing himself.[4]  (*See*, *e.g.*, R.
228, 229, 456, 457, 490, 498.)  In sum, reliance on the lack of
*current* diagnostic testing in the face of consistent acknowledgment
by treating physicians of a chronic physical problem that
reportedly causes more than minimal difficulties for Plaintiff
cannot be considered "substantial evidence" to find an impairment
non-severe at step two.

    It also appears that ALJ Hardiman engaged in more than *de*

---

[4]  Similarly, the conservative nature of the treatment
provided cited by ALJ Hardiman (R. 17) is attributable in part to
his financial condition.  (*See*, *e.g.*, R. 228, 229, 456, 457, 490,
498.)

*minimis* screening at step two by undermining certain objective findings for lack of detail: "*the degrees are not noted* with respect to straight leg raising, and the doctor *does not note which reflexes* are 'minimal' (Exhibit B6F) . . . Dr. Janerich [made] . . . findings . . . of restricted neck motion and spasm, *without noting degrees of limitation or precise location* of the spasm (Exhibits B4F and B5F). (R. 17 (emphasis addede).)

Because Plaintiff has pointed to objective evidence supporting limitations related to his C4-C5 disc herniation and he has arguably presented evidence that this impairment could be considered more than a slight abnormality which would have more than a minimal effect on his ability to work, any doubt of whether he made the required showing at step two should have been resolved in his favor. *See Newell*, 347 F.3d at 546-47. Thus, the ALJ's more strenuous step-two analysis and resulting determination cannot be considered to be based on substantial evidence and this matter must be remanded for further consideration.

Based on the analysis set out above, remand will necessarily entail a reevaluation of the record, including Plaintiff's complaints of pain and evidence related to his mental health problems. Furthermore, given Plaintiff's economic situation and the ALJ's assessment of treating physicians' records, strong consideration should be given to the duty to assist the claimant in developing the record.

22

## V.Conclusion

For the reasons discussed above, I conclude Plaintiff's appeal is properly granted.  This matter is remanded to the Acting Commissioner for further consideration consistent with this opinion.  An appropriate Order is filed simultaneously with this Memorandum.


S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge


DATED: May 10, 2016

23